| | |
|---|---|
| **Law Offices of Avrum J. Rosen, PLLC** | **Hearing Date: April 19, 2023** |
| 38 New Street | **Hearing Time: 3:30 p.m.** |
| Huntington, New York 11743 | **Objection Deadline: April 12, 2023** |
| (631) 423-8527 | |
| Avrum J. Rosen, Esq. | |
| Alex E. Tsionis, Esq. | |

*Attorneys for Debra Kramer, Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:                                                                                  Chapter 7

COMMERCIAL KITCHEN DESIGNS, INC.,              Case No.: 17-42981-nhl

                                        Debtor.
----------------------------------------------------------x

**MOTION OF THE CHAPTER 7 TRUSTEE FOR AN ORDER
AUTHORIZING THE SALE OF CERTAIN STATE COURT CLAIMS OF THE
DEBTOR'S ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND RELATED RELIEF**

**TO:    THE HONORABLE NANCY HERSHEY LORD
         UNITED STATES BANKRUPTCY JUDGE**

Debra Kramer, the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Commercial Kitchen Designs, Inc. (the "Debtor"), by and through her attorneys, the Law Offices of Avrum J. Rosen, PLLC, respectfully submits this motion (the "Motion") seeking the entry of an order: (i) authorizing the Trustee's sale of the estate's right, title and interest in the causes of action/claims for damages (the "Asset") in the state court action styled *Birinder Madan and Commercial Kitchen Design, Inc. v. Gregory Rowehl, Gabriela Rowehl, Berkshire Pizzeria LLC, and Berkshire Kitchen Design, Inc.*, pending in the Supreme Court of the State of New York, County of Kings, Index No. 500627/2015 (the "State Court Action") to Birinder Madan (the "Stalking Horse Bidder"), or to such other bidder making the highest and/or best offer at a public auction, free and clear of liens, claims, interests, and encumbrances pursuant to sections 105(a) and 363(b), (f) and (m) of Title 11 of the United States Code (the "Bankruptcy Code"), rule 2002

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and E.D.N.Y. LBR 6004-1 of the E.D.N.Y. Local Bankruptcy Rules (the "Local Rules"); (ii) approving the terms of the asset purchase agreement (the "Purchase Agreement") annexed hereto as **Exhibit "A"**; (iii) approving the terms and conditions for submitting offers and bidding procedures; (iv) approving the form and manner of notice with respect to the auction hearing; (v) waving the fourteen (14) day stay under rule 6004(h) of the Bankruptcy Rules; and (vi) granting related relief. In support of the Motion, the Trustee respectfully states as follows:

## JURISDICTION

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief sought herein are sections 105(a), 363(b), (f) and (m) of the Bankruptcy Code, rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 6004-1 of the Local Rules.

## BACKGROUND

**A.    Bankruptcy Filing and Appointment of the Trustee**

3.  On or about June 8, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.  On or about May 27, 2019, the Debtor's bankruptcy case was converted to one under Chapter 7 of the Bankruptcy Code, and the Trustee was appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate.

**B.    The State Court Action and the Asset**

5.  As of the Petition Date, the Debtor was a plaintiff in the state court action styled

*Birinder Madan and Commercial Kitchen Design, Inc. v. Gregory Rowehl, Gabriela Rowehl, Berkshire Pizzeria LLC, and Berkshire Kitchen Design, Inc.*, pending in the Supreme Court of the State of New York, County of Kings, Index No. 500627/2015 (the State Court Action as defined above).

6.  The State Court Action is a civil action filed by the Debtor and the Stalking Horse Bidder alleging, among other things, that defendants Gregory Rowehl and Gabriella Rowehl (collectively, the "Rowehls"), which, upon information and belief were "insiders" of the Debtor as that term is defined in the Bankruptcy Code, illicitly embezzled, diverted, and converted approximately $500,000.00 in funds from the Debtor, some of which were utilized by the Rowehls in businesses that they now own and/or manage.

7.  As a co-plaintiff in the State Court Action, the Debtor has asserted causes of actions/claims for damages against the defendants (the Asset as defined above), which the Debtor may be entitled to monetary compensation. However, neither the Trustee nor her agents can definitively value the Asset as it is a unique intangible asset that is not actively traded in a market. Further, whether the Asset yields a recovery is unknown at this time. Accordingly, the Trustee, in the exercise of her business judgment, has determined that the cost of pursuing the Asset (litigating the claims) will likely exceed the benefit that the estate would possibly receive on account of the Asset.

## C. **Proposed Purchase Agreement**

8.  The Trustee, in an effort to better understand the value of the Asset, reached out to the Stalking Horse Bidder, who offered $15,000.00 for the Asset. As of the drafting of this Motion, the highest and best offer received for the Asset was by the Stalking Horse Bidder in the amount of $15,000.00.

9. The Trustee and the Stalking Horse Bidder have negotiated the Purchase Agreement for the sale of the Asset, substantially in the form attached hereto as **Exhibit "A"**. The Asset is being sold "AS IS", "WHERE IS", "WITH ALL FAULTS" and with no other representations, legal and/or equitable.

10. The Purchase Agreement generally provides for a purchase price of $15,000.00 (the "Purchase Price") for the Asset to be paid by the Stalking Horse Bidder to the Trustee for the benefit of the Debtor's estate. The negotiations were conducted at arm's length and in good faith. The Trustee has no connection to the Stalking Horse Bidder, who is an "insider" of the Debtor as that term is defined in the Bankruptcy Code. Further, to the best of the Trustee's knowledge, there is no evidence of bad faith or a lack of good faith.

11. In accordance with the Purchase Agreement, the Asset means the estate's right, title and interest in the causes of action/claims for damages against the defendants in the State Court Action only.

12. In the Trustee's business judgment, the Purchase Price represents a fair and reasonable sales price for the Asset, and represents the highest and best offer for the sale of the Asset. Additionally, the benefit of receiving immediate payment for the Asset, which may yield no recovery at all if the claims are litigated, outweighs the potential benefit of retaining the Asset. Finally, the Trustee believes that the cost of pursuing the Asset will likely exceed the benefit that the estate would possibly receive.

## REQUESTED RELIEF

13. By this Motion, the Trustee seeks the entry of an order pursuant to sections 105(a) and 363(b), (f), and (m), Bankruptcy Rule 6004 and Local Rule 6004-1: (i) authorizing the Trustee's sale of the estate's right, title and interest in the Asset to the Stalking Horse Bidder, or

to such other bidder making the highest and/or best offer at a public auction, free and clear of liens, claims, interests, and encumbrances; (ii) approving the terms of the Purchase Agreement; (iii) approving the terms and conditions for submitting offers and bidding procedures; (iv) approving the form and manner of notice with respect to the auction hearing; (v) waving the fourteen (14) day stay under rule 6004(h) of the Bankruptcy Rules; and (vi) granting related relief

## BIDDING PROCEDURES

14. Contemporaneously herewith, the Trustee has filed a notice of motion (the "Notice"), which establishes a deadline by which objections or responses to this Motion must be filed with the Court (the "Objection Deadline").

15. The Trustee is prepared to consummate the sale of the Asset to the Stalking Horse Bidder pursuant to the terms set forth herein and in the Purchase Agreement. Notwithstanding, in the event a party other than the Stalking Horse Bidder (each, a "Competing Bidder") wishes to purchase the Asset, the Trustee requests that the Court approve the Trustee's application of the overbid procedures set forth below (collectively, the "Bidding Procedures"), the practicality and efficiency of which serve the best interests of the Debtor's estate and creditors:[1]

   a. Each Competing Bidder who wants to participate in the overbid process must file a notice of overbid with the Court and serve such filing on the Trustee and the Stalking Horse Purchaser in accordance with the Notice on or before the Objection Deadline;

   b. The first overbid by a Competing Bidder for the Asset must be at least $2,000 more than the Purchase Price, or a total of $17,000.00;

   c. Each Competing Bidder must also submit a Cashier's Check to the Trustee in the amount of such Competing Bidder's first overbid at the time such overbid is filed;

   d. Any Competing Bidder for the Asset must purchase the Asset under the same terms

---

[1] The Trustee makes this request out of an abundance of caution to protect the interests of the Debtor's estate and its creditors. Trustees too often receive sale inquiries that merely suggest an interest in bidding but are not actual overbids, resulting in unnecessary time and expense to the estate if they must prepare for an auction and hearing all for naught. The Trustee understands that the Bidding Procedures may be considered mooted in the absence of a Competing Bidder.

and conditions set forth in the Purchase Agreement, other than the Purchase Price;

e. In the event the Trustee receives an overbid that meets the foregoing conditions, the Trustee will notify the Stalking Horse Bidder and any Competing Bidders of the date and time by which each party may submit by email its respective best and final offer for the Asset;

f. Within one (1) business day of receiving the best and final offers, the Trustee will notify the Stalking Horse Bidder and any Competing Bidders of the winning bid; and

g. At the time of the hearing on the Motion, the Trustee will request that the Court approve the winning bidder as the purchaser.

## AUTHORITY FOR REQUESTED RELIEF

16. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

17. To approve the use, sale or lease of property outside the ordinary course of business, the Court must find that such sale is supported by the sound business judgment of the debtor or trustee, as the case may be. *See In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986) (requiring good faith purchasing); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675

(Bankr. S.D.N.Y. 1989); and *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.").

18.     A trustee's showing of sound business judgment, in turn, need not be unduly exhaustive; instead, the trustee is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.*, 973 F.2d 141, 144 (2d Cir. 1992).

## DISCUSSION

19.     The Trustee submits that the sale of the Asset pursuant to the Purchase Agreement represents a prudent and proper exercise of the Trustee's business judgment under the circumstances, and is in the best interests of creditors of the Debtor's estate. Specifically, the Purchase Agreement was negotiated at arm's length and in good faith, and the Trustee believes that the Purchase Price is reasonable and represents fair value. Therefore, the Trustee respectfully requests that the Court approve the sale of the Asset to the Stalking Horse Bidder.

20.     Moreover, based on the foregoing, the Stalking Horse Bidder should be deemed a good faith purchaser.[2] Although the Bankruptcy Code does not define "good faith purchaser," the United States Court of Appeals for the Third Circuit construing section 363(m), has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'." *In re Abbott's*

---

[2] The Stalking Horse Bidder is an "insider" of the Debtor as that term is defined in the Bankruptcy Code.

*Dairies of Pa., Inc.*, 788 F.2d at 147; *see also In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); and *In re Vanguard Oil & Serv. Co.*, 88 B.R. 576, 580 (E.D.N.Y. 1988).

21.     Additionally, section 363(f) of the Bankruptcy Code permits a trustee to sell assets free and clear of all interests which may be asserted against such assets, with any such interests attaching to the net proceeds of the sale, if subject to the rights and defenses of a debtor with respect thereto:

  a. Applicable non-bankruptcy law permits sale of such property free and clear of such interest;

  b. Such entity consents;

  c. Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

  d. Such interest is in bona fide dispute; or

  e. Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary to meet one of the five conditions of section 363(f).  Here, since the Asset is not encumbered, and since the Asset is indisputably property of the estate, the Trustee has satisfied the requirement and element of section 363(f)(1) of the Bankruptcy Code. Further, to the extent that there are interests that may be asserted in the Asset, the Trustee believes that one or more of the aforementioned conditions have been satisfied.

22.     Finally, the Trustee's proposed Bidding Procedures are appropriate and should be approved by the Court, provided that a Competing Bidder submits an overbid to purchase the Asset. The Bidding Procedures not only provide parties sufficient notice for participation, but also permit the Trustee to apply a fair, practical and efficient means to receive and evaluate overbids

for the Asset. Courts have routinely held that when the sale of assets in bankruptcy are done on a competitive bidding basis, as is proposed herein, it is appropriate to require parties submitting competing bids to submit bids that exceed the existing bid by a specified amount. *See, e.g.*, *In re Financial News Network Inc.*, 931 F.2d 217 (2d Cir. 1991). The Stalking Horse Bidder expended, and will continue to expend, considerable time, money, and energy pursuing the purchase of the Asset as proposed herein, and has engaged in good faith, arm's length negotiations with the Trustee.

## WAIVER OF STAY OF ORDER

23. To successfully implement the Purchase Agreement, the Trustee also seeks a waiver of the fourteen (14) day stay under Bankruptcy Rule 6004(h).

[*Remainder of Page Intentionally Left Blank*]

## **NOTICE**

24. Notice of this Motion has been given to the Debtor, the Office of the United States Trustee, the Stalking Horse Bidder, and all parties requesting notice pursuant to Bankruptcy Rule 2002. The Trustee submits, and requests that this Court determine, that such notice is proper and adequate; no further notice is required; and that other and further notice be waived.

**WHEREFORE**, the Trustee respectfully requests entry of an order: (i) authorizing the Trustee's sale of the estate's right, title and interest in the Asset to the Stalking Horse Bidder, or to such other bidder making the highest and/or best offer at a public auction, free and clear of liens, claims, interests, and encumbrances; (ii) approving the terms of the Purchase Agreement; (iii) approving the terms and conditions for submitting offers and bidding procedures; (iv) approving the form and manner of notice with respect to the auction hearing; (v) waving the fourteen (14) day stay under rule 6004(h) of the Bankruptcy Rules; (vi) granting related relief; together with (vii) such other, further, and different relief as this Court deems just, proper and equitable.

Dated: March 16, 2023  
       Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**

By: */s/ Avrum J. Rosen*  
Avrum J. Rosen, Esq.  
Alex E. Tsionis, Esq.  
38 New Street  
Huntington, New York 11743  
(631) 423 8527  
arosen@ajrlawny.com  
atsionis@ajrlawny.com

*Counsel to Debra Kramer,*  
*Chapter 7 Trustee of the Estate*  
*of Commercial Kitchen Designs, Inc.*